STEKETEE v. NEWKIRK.

1. CANCELLATION OF INSTRUMENTS—FRAUD—UNDUE INFLUENCE.
   Evidence *held* to show no fraud or undue influence of complainant's husband in procuring from complainant a deed of real property to himself and her jointly.

2. EVIDENCE—PHYSICIANS—PRIVILEGE.
   It is necessary to the privilege created by 3 Comp. Laws, § 10181, 5 How. Stat. (2d Ed.) § 12826, that the information offered as evidence was obtained by the witness in his professional character as a physician and was necessary to enable him to prescribe for the patient as a physician or to do any act for him as a surgeon: his testimony as to the patient's general health and mental condition is admissible.

3. SAME—ATTORNEY AND CLIENT.
   Testimony of an attorney, as to any matters not communicated to him in confidence by his client, is admissible in evidence.

4. SAME—TRUSTS.
   Letters written to a trustee of the estate of complainant's father, in which she had a beneficial interest, were not privileged, in the absence of evidence to show that such trustee was complainant's attorney.

5. DEEDS—HUSBAND AND WIFE—ESTATES BY ENTIRETIES.
   The deed creating an estate by the entireties was not invalid because of the fiduciary relation existing between husband and wife.

Appeal from Kent; Perkins, J. Submitted October 10, 1912. (Docket No. 20.) Decided December 17, 1912.

Bill by Anna L. Newkirk, Jacob Steketee, special administrator, being substituted after her death as complainant, and Margaret H. Billinghurst being admitted as a joint complainant, against Hawley A. Newkirk and others for the cancellation of certain deeds. From a decree for defendants, complainants appeal. Affirmed.

*Thomas P. Bradfield* (*Kleinhans & Knappen* and *Chas. A. Watt*, of counsel), for complainants.

*Wilson, Wilson & Rice* (*Albert G. Welch*, of counsel), for defendants.

The bill of complaint in this cause was filed October 12, 1908, by Anna L. Newkirk against Hawley Newkirk and Jule F. Brower, for the purpose of setting aside two deeds of real estate in the city of Grand Rapids in this State, made in February, 1892, on the grounds of alleged undue influence and false representations. Hawley A. Newkirk and Anna L. Newkirk were husband and wife. She was one of the daughters of George B. Morton, who died in 1876, leaving a widow and two daughters, Ada B. Morton (Hughart) and Anna L. Morton (Newkirk). His property, which consisted of real estate, went, under his will, as follows: One-third to the widow in fee, and one-third in trust to each of the daughters; it being provided that the daughters should receive the income during their lives and at their death the property was to go to their issue in fee. The widow died in 1881, and the one-third of the property left her by will went, in equal shares in fee to the two daughters, giving each of the daughters one-sixth of the property in fee simple, in addition to the income from one-third of the property given each of them by the will of their father. Mrs. Anna L. Newkirk had been previously married to William Hofstra, and they had

two children, Laura Hofstra and Margaret Hofstra.
Laura Hofstra is now deceased, and Margaret Hofstra
since married, and is the complainant Margaret H. Bill-
inghurst. There was one child as the result of the mar-
riage of Mr. and Mrs. Newkirk, born on November 6,
1892, and being the defendant Abigail N. Hillerman.
Mrs. Newkirk died in 1909, leaving a will appointing
Peter Doran and Blanche M. Butler executors and trus-
tees. Objections having been filed to the allowance of
the will, Peter Doran was appointed special administra-
tor, and was substituted as complainant. Peter Doran
died on the eve of the trial, whereupon Jacob Steketee
was appointed as special administrator, and he, in turn,
substituted as complainant.

Upon the death of Mrs. Newkirk in 1909, the one-third
interest in the property, the income of which she had for
life, became the fee-simple property of her two daughters,
the complainant Mrs. Billinghurst and the defendant
Mrs. Hillerman; each owning one-sixth. The title to the
property stood as follows: One-third in Ada B. Hughart
for life; at her death fee to her heirs. One-sixth in Ada
B. Hughart in fee. One-sixth in Margaret Billinghurst
in fee. One-sixth in Abigail W. Hillerman in fee. One-
sixth in defendant Hawley A. Newkirk, surviving joint
tenant under the deed which it is sought to set aside in this
suit. It appears that Mrs. Newkirk, after separation
from her first husband, from whom she was divorced,
and after her remarriage, became fearful that some of her
property might go to her former husband. This is evi-
denced by a letter which she wrote to Mr. Blair, in the
city of Grand Rapids, on April 2, 1891, shortly after her
marriage to Mr. Newkirk:

"I don t intend to let the little I have got ever pass into
Hofstra's hands, and shall either deed it now to Hawley
[defendant Newkirk] or fix it in my will so that, in case
the children die before they are of age and I die before
them, Mr. Hofstra cannot get what I have."

On January 6, 1892, Mrs. Newkirk called upon Mr.

Wolseley, an attorney at law in the city of Chicago, for the purpose of having deeds drawn to carry out this intention. The result of this call was that Mr. Wolseley drew deeds from Mr. and Mrs. Newkirk to the defendant Brower, who was a clerk in his office, and deed from him back to them, an undivided one-half to each, which Mr. Wolseley stated was the method used in Illinois for a wife to convey an interest in property to her husband. On January 18th of the same year, Mr. and Mrs. Newkirk called at the office of Mr. Wolseley and signed these deeds. This was the first time that Mr. Wolseley had seen Mr. Newkirk with reference to the transaction. The deeds were not delivered, but the matter of creating an estate in joint tenancy was discussed. Mr. Wolseley, desiring to examine the law of Michigan on this subject, did not prepare deeds until January 22d, placing the title of the Michigan property in Mr. and Mrs. Newkirk as joint tenants.

It appears that Mrs. Newkirk owned an interest in two pieces of property in Grand Rapids; one known as the "Morton House property," and the other as the "barn property." On February 13th Mr. and Mrs. Newkirk again came to the office of Mr. Wolseley and the deeds were executed, placing the title to the "barn" property in them as joint tenants. On February 24th they again came to Mr. Wolseley's office, and at this time the deeds were executed placing the title to the undivided one-sixth of the Morton House property in Mr. and Mrs. Newkirk as joint tenants. This was done by Mrs. Newkirk deeding the property to Brower, who immediately deeded this interest to Mr. and Mrs. Newkirk as husband and wife. The deeds were left with Mr. Wolseley, who forwarded them to Grand Rapids to be recorded. Mr. Wolseley took the acknowledgment of the deeds, and he and Henry B. Freeman acted as witnesses. At the time the deeds were executed, the parties resided in the city of Chicago, where Mr. Newkirk has lived ever since. During the first

few years of their married life, they lived, at least a part of the time, in the city of Chicago, and then boarded at boarding houses and hotels in Chicago in the spring and fall, and at a summer hotel at Lake Harbor, Mich., in the summer. The winters, from this time on, were spent by Mrs. Newkirk with her daughters in California.

The bill in this case was filed on October 12, 1908, more than 16 years after the deeds in question were executed. The bill alleges the following:

" That prior to the making of the deed heretofore mentioned by your oratrix to said Jule F. Brower, your oratrix was sick and in a very feeble condition, and had so been for a long period of time, to wit, six months; that at the same time your oratrix was with child, and the time of childbirth was very near, and that from the sickness and expected birth of a child her life was despaired of, and she, your oratrix, was in such a feeble, sick and nervous condition as to be mentally incompetent to transact business or care for her property rights in a proper manner; that while in this condition, and so sick, feeble, and mentally incompetent, the said defendant Hawley A. Newkirk began working upon the fears of your oratrix, and falsely represented to your oratrix that if she should die in childbirth no provision would be made for their then unborn child, and urged upon her in her then condition to make some temporary arrangement whereby he might properly care for the child, and urged and continually argued with your oratrix to deed her property in the manner above mentioned, so that the property would be jointly owned by your oratrix and the said Hawley A. Newkirk as husband and wife, claiming and representing that by so doing the interest of their then unborn child would be better secured; that he, in consideration thereof, promised and agreed that this arrangement would be but temporary, and that if your oratrix survived the birth of their child he would immediately reconvey all of the aforesaid property to your oratrix, and that she would then own the property the same as before; that the said Hawley A. Newkirk agreed to so prepare the papers and conveyance that she, your oratrix, in the event of her surviving the birth of their child, could, if necessary, compel the reconveyance to her of said property as he, the said Hawley A. Newkirk, had promised and agreed; that by rea-

son of the continued arguments, importunities, promises, and representations thus made by the said Hawley A. Newkirk, your oratrix was overpersuaded and unduly influenced in her then weak, mental and physical condition, to consent to the transfer of said property and land, as requested by the said Hawley A. Newkirk; that said Hawley A. Newkirk is and was the husband of your oratrix, and that your oratrix relied upon his representation so made, and statements and promises as aforesaid, and believed that the said Hawley A. Newkirk would take such steps and prepare such papers as were necessary to protect the rights and interests of your oratrix; that your oratrix took no part in the preparation of said legal papers, but left the same entirely to her husband, the said Hawley A. Newkirk; and that on the 3d day of February, A. D. 1892, aforesaid, your oratrix was in so weak a condition, both mentally and physically, as to be wholly unable to transact business or understand the business that was transacted, and had no knowledge of the contents of the papers which she signed, except in a vague and wholly insufficient way; that while in such condition, and under the circumstances aforesaid, and relying upon the representation and statements aforesaid, she executed and delivered the deed aforesaid to said Jule F. Brower, and which said deed was obtained by undue influence and at a time when the will and judgment of your oratrix was so impaired by ill health as to, in fact, render the same not the act of your oratrix; * * * that on or about the 6th day of November, A. D. 1892, a daughter was born to your oratrix and the said defendant Hawley A. Newkirk, and that your oratrix continued sick for a long period of time thereafter, to wit, 11 years; that your oratrix subsequently partially recovered her health, but that for a number of years thereafter her daughter, Abbie Newkirk, was in poor health, and your oratrix was obliged to make long trips with their said daughter to California for her health; that during all of this time and up to the time of the filing of this bill of complaint, your oratrix has had the possession of the said land and has received the rents and profits therefrom, and the said Hawley A. Newkirk has never attempted at any time to secure possession of the same nor has he had possession thereof, either legally or constructively; that after partially regaining her health, your oratrix from time to time requested the said defendant Hawley A.

Newkirk to reconvey said property to her, as he had before promised, but that the said Hawley A. Newkirk put her off from time to time with excuses and neglected to deed the same to her as promised."

No effort was made to serve either the defendant Newkirk or Brower with process, but an attempt was made to bring them in by publication. Proof of publication was filed, and an order entered taking the bill of complaint as confessed by both defendants. On March 2, 1909, the deposition of Mrs. Newkirk was taken in California ex parte and without any notice to Mr. Newkirk. A decree was made eight days later in accordance with the prayer of the bill. The description of the property in this decree was erroneous, and an amended decree was made April 20, 1909. Mrs. Newkirk died on May 31, 1909, and Mr. Newkirk learned of the decree a few days before her death. He thereupon filed a petition asking permission to appear and defend, and the decree was vacated, in accordance with section 496 of the Compiled Laws of 1897 (4 How. Stat. [2d Ed.] § 12014), and an order made permitting defendants to appear and defend. Both appeared and filed answers.

The answer of the defendant Newkirk denies all the material allegations of the bill of complaint. It denies that he made to her any of the representations charged in the bill and that he asked her to give him any interest in the property. It states that their child was not born until November 6, 1892, and that the deeds were made in February, 1892, and that at the time the deeds were made Mrs. Newkirk was—

" In her normal condition and made the deeds because she thought it was advisable that the property covered by the said deeds should be vested in herself and husband jointly."

The defendant Brower filed a separate answer, which showed that he acted simply as an intermediary in placing the title in Mr. and Mrs. Newkirk jointly, and denies, so far as he is concerned, all the charges of fraud and mis-

representation made in the bill of complaint. The defendant Abigail N. Hillerman, being a minor, refused to join as a party complainant, and Harry F. Johnson was appointed her guardian *ad litem* and filed the usual infant's answer, submitting Mrs. Hillerman's rights to the protection of the court.

Upon the trial, the complainants offered the *ex parte* deposition of Mrs. Newkirk, taken before the defendants appeared in the case. The defendants objected to the admission of the deposition, and moved that it be suppressed, and the court made an order to that effect, and a motion has been made in this court to strike this deposition from the record. The complainants attempted to make out their case by the testimony of Mrs. Billinghurst and Mary E. Davies, formerly a servant of Mrs. Newkirk. The principal evidence of the defendants consisted of the depositions of Mr. Brower, Mr. Wolseley, Judge Freeman, Dr. Bailey, the family physician, and documentary evidence. After hearing all the testimony the circuit judge dismissed the bill, and the complainants have appealed to this court.

KUHN, J. (*after stating the facts*). It is contended by appellants:

(1) That the deposition of the original complainant should not have been suppressed by the circuit judge at the rehearing of the case.

(2) That the testimony of Dr. Bailey as to matters which he learned in his professional relations was incompetent.

(3) That the testimony of Mr. Wolseley, the attorney who drew the deeds, was incompetent, as involving negotiations between client and attorney.

(4) That the letters offered in evidence by the original complainant to Mr. Blair were inadmissible as privileged communications between client and attorney.

(5) That the conveyance should have been set aside because of the fiduciary relations sustained by the parties as husband and wife, and on the grounds of undue influence, fraud, misrepresentation, and over-persuasion, and

that, in addition, there was an assent by silence on the part of the defendant Newkirk in all conversations with his wife regarding this transaction, and that equity will not permit him to claim any different or other agreement or state of facts than was understood and claimed by the complainant during her lifetime in his presence.

Counsel for the complainants urge strongly that a promise to reconvey was made by defendant Newkirk and that it was never carried out. It seems to us that upon this phase of the case a careful examination of the conduct of Mrs. Newkirk during the period elapsing from the time she executed the deeds up to the time she filed her bill is very material. The testimony discloses that, notwithstanding the claimed promise to reconvey and Mr. Newkirk's failure to carry it out, on April 15, 1893, she executed a very broad power of attorney to her husband, intrusting him with the uncontrolled direction of her affairs, and it is not claimed that the power was executed by Mrs. Newkirk under duress, but was apparently her free and voluntary act. From March 9, 1897, to March 19, 1904, letters were offered in evidence, written by her to her husband, in which she expresses confidence in him. On May 27, 1899, seven years after the execution of the conveyance in question, Mrs. Newkirk's confidence in her husband was further shown by appointing him executor of her estate. On March 19, 1904, 12 years after the execution of the deeds, her confidence is further displayed by a letter in which she consults him in relation to a proposed transaction in regard to this property, and in which she says:

"What do you think? If it's all right, and you think best, you better sign also, and send it to them. Otherwise destroy the option."

There is also a postal card in the record, dated May 28, 1907, containing a photograph of Mrs. Newkirk. Considerable discussion has been had with reference to the date when this card was sent, it being claimed it was sent in 1901, and the card has been submitted to us for examina-

tion. The year is stamped on the postage stamp, and while the "7" is not very plain, a close inspection satisfies us that it is a "7." Moreover, the stamp is a special stamp printed by the government in commemoration of the Jamestown Exposition, and has on it, "Commemoration Series, 1907." There is nothing in the message on the card which would indicate any estrangement between herself and her husband. She concludes:

"God bless and keep you many years. Yours, Anna."

It seems to us that the conduct of Mrs. Newkirk during the time that elapsed from the time she gave the deeds in question up to the time that she filed her bill of complaint is entirely inconsistent with the theory of complainants that the defendant Newkirk had made a promise to reconvey and had failed to carry it out. As counsel in their brief contend:

"Evidence derives its probative value from its inherent probability of truth. The spontaneous word or action, which is part of the *res gestœ* of a transaction, has greater probative force than a subsequent interested, perhaps studied, self-serving declaration. For that reason Mrs. Newkirk's correspondence and the circumstances which are the *res gestœ* of the execution of these deeds are more persuasive than her declarations."

The evidence introduced to substantiate the allegations of the bill was the testimony of Mary E. Davies and the complainant Mrs. Billinghurst. It appears that when her mother married Mr. Newkirk Mrs. Billinghurst was 8 years old, and 9 years old when her sister, Mrs. Hillerman, was born. She attempts to testify as to conversations which she claims to have overheard at the time when she was between the ages of 9 and 15 years. The witness Mary E. Davies did not enter the employ of Mrs. Newkirk until 1896, which was four years, at least, after the birth of Mrs. Hillerman. The trial judge saw and heard both these witnesses, and had an opportunity of judging of the reliability of the testimony.

The testimony of Dr. Bailey was confined to the state of Mrs. Newkirk's general health and mental condition. He was not examined as to any information gained from Mrs. Newkirk, or as to any communication with her. It does not appear that what he stated on the stand was information which "was necessary to enable him to prescribe for her." This is necessary, in order to bring it within the prohibition of section 10181, 3 Comp. Laws (5 How. Stat. [2d Ed.] § 12826), which provides:

"No person duly authorized to practice physic or surgery, shall be allowed to disclose any information which he may have acquired in attending any patient, in his professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or to do any act for him as a surgeon."

We think the testimony was properly admitted. 4 Wigmore on Evidence, § 2383; *Campau* v. *North,* 39 Mich. 606 (33 Am. Rep. 433); *Dittrich* v. *City of Detroit,* 98 Mich. 245 (57 N. W. 125); *Lincoln* v. *City of Detroit,* 101 Mich. 245 (59 N. W. 617).

The testimony of Mr. Wolseley was also admissible. While the rule is that confidential communications between attorney and client cannot be disclosed by the attorney without the consent of the client, or, after his death, of the personal representative of the client, Mr. Wolseley's testimony did not come within this rule, because he was not asked and did not state any communication between himself and Mrs. Newkirk.

The letters written to Mr. Blair were objected to, because it was claimed that they were privileged communications between client and attorney. Mr. Blair was acting as trustee under the will of her father, George B. Morton, and she was beneficiary under the will. An examination of the letters does not disclose that the relation of attorney and client existed, nor is there any evidence in the record to show that relationship.

Without passing upon the questions of whether or not the circuit judge should have considered the deposition of

Anna L. Newkirk, whether the motion to suppress should be granted in this court, or whether the testimony of Hawley Newkirk was improperly admitted, for the purpose of this case, giving the deposition all the probative force it is entitled to, it would not, in our opinion, change the determination of the issues here involved.

After carefully going over the record in this case, considering the exhaustive briefs of the solicitors for complainants, but being of the opinion that the arrangement made between Mrs. Newkirk and her husband does not do violence to justice and equity, we decline to disturb the determination of the lower court.

The decree is affirmed, with costs.

MOORE, C. J., and STEERE, MCALVAY, BROOKE, STONE, OSTRANDER, and BIRD, JJ., concurred.